UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY,<br>Plaintiff, | : :<br>: | |
| v. | : :| 3:08-cv-805 (CFD) |
| MORRIS I. OLMER, LLC; MORRIS I. OLMER;<br>FIRST AMERICAN TITLE INSURANCE<br>COMPANY d/b/a/ THE TALON GROUP;<br>THOMAS GALLAGHER; BEVERLY BENTON;<br>RONALD MILLER; SMOKEY J. REGAN;<br>BELINDA YOUNG; TICOR TITLE INSURANCE<br>COMPANY; ROBERT MILLER; and CLIENT<br>SECURITY FUND COMMITTEE,<br>Defendants. | : : : : : : : : : | |

## **RULING ON MOTION FOR SUMMARY JUDGMENT AND MOTION FOR DEFAULT**

Plaintiff, Continental Casualty Company ("Continental"), brought this declaratory judgment action against the defendants to determine the parties' rights and responsibilities under the Professional Liability Insurance Policy ("the policy") that Continental issued to Defendant Morris I. Olmer, LLC ("the Firm"). Continental now moves for summary judgment asking the Court to declare that Continental is entitled to rescind the policy as a matter of law, and seeks the repayment of defense costs. Alternatively, Continental asks the Court to declare that the policy does not cover the so-called "Gallagher Claim" or claims for which the Client Security Fund Committee ("CSFC") has paid, and that Continental is entitled to the repayment of defense costs for these claims. Defendants First American Title Insurance Company ("First American"), CSFC, and Ticor Title Insurance Company ("Ticor") oppose summary judgment. For the reasons that follow, summary judgment is granted in part and denied in part.

-1-

Continental has separately moved for an entry of default judgment against Defendants Morris I. Olmer, LLC, Morris I. Olmer, Thomas Gallagher, Beverly Benton, Ronald Miller, Smokey K. Regan, and Robert Miller.[1] These defendants have not yet responded to Continental's complaint, which was filed in 2008. For the reasons that follow, a finding of default shall enter against these defendants.

**I.    Factual Background**[2]

Olmer was a real estate attorney in New Haven, Connecticut who also acted as a title insurance issuing agent for First American (d/b/a The Talon Group) and Ticor. In 2005, two lawsuits were filed against Olmer claiming legal malpractice. Olmer did not report these lawsuits to his then-liability insurer, Westport Insurance Corporation ("Westport"). The first suit was by Stephen Smythe in March 2005. In his deposition, Olmer asserted that this suit was settled for $3000. According to the State of Connecticut Judicial Branch Website, the Smythe suit was dismissed by stipulation on January 11, 2008. The second lawsuit was filed by James Walker in September 2005. In his deposition, Olmer asserted that this suit was settled for approximately $5000–$6000 and believes that the settlement occurred prior to August 2006.

A.    The Policy

On August 2, 2006, Olmer (on behalf of the Firm) signed an application for professional liability insurance with Continental for the coverage year October 15, 2006 to October 15, 2007.

---

[1]Although Belinda Young is also a named defendant and has not answered the complaint or otherwise appeared, she is not named in the motion for default.

[2]The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

Question 3 of the application asked: "Are there any claims against the firm that have NOT been reported to Westport Insurance Corporation in the past 12 months?"[3] Olmer checked "No" as the answer to this question. Olmer did, however, answer "Yes" to the question "[h]as any attorney been refused admission to practice, disbarred, suspended or formally reprimanded or been subject to any disciplinary inquiry, complaint or proceedings for any reason other then non-payment of dues during the past 12 months?" In his deposition, Olmer asserted that the application was "true and accurate to the best of [his] ability at that time," and that he likely did not include the Smythe and Walker claims in his answer to Question 3 because he "didn't remember them or . . . didn't think about them, not because [he] attempted to mislead" the insurance company.

The application contained language declaring that the applicant represented the statements to be true, complete, and accurate, that there was no attempt at suppression or misstatement of material facts, and that the application was to become a part of the policy. Continental claims that it would not have issued the policy to Olmer, or would not have issued it on the same terms, if it had known about the two 2005 lawsuits.

In the policy, Continental agreed to pay all damages owed because of a claim made against the Insured and reported to Continental during the policy period. The policy also notes that "if related claims are subsequently made against the Insured and reported to the Company, all such related claims, whenever made, shall be considered a single claim first made and reported to the Company within the policy period in which the earliest of the related claims was

---

[3] Westport was the Firm's liability carrier at that time.

first made and reported to the Company."[4] Further, the policy states that

> By acceptance of this Policy the Insured agrees that: . . . all of the information . . . provided . . . by the Insured [is] true, accurate and complete and shall be deemed to constitute material representations made by the Insureds; . . . this Policy is issued in reliance upon the Insured's representations; . . . [and] the misrepresentation of any material matter by the Insured . . . will render this Policy null and void and relieve the Company from all liability herein.

Finally, Exclusion A of the policy declares that the policy does not apply to a claim based on or arising from "dishonest, fraudulent, criminal or malicious act[s] or omission[s] by an Insured." Continental agrees to defend the insured until such act or omission has been determined by a "trial verdict, court ruling, regulatory ruling or legal admission."

B.  Gallagher Claim

On September 22, 2006, Olmer received a demand letter from an attorney who represented David Cappetta, an individual who held a mortgage on 626 Savin Ave., West Haven, Connecticut. The demand letter stated that Olmer had represented Thomas Gallagher ("Gallagher"), the purchaser of the property, at a July 28, 2006 closing, and that Gallagher had failed to pay off Cappetta's preexisting mortgage. The letter demanded satisfaction of the mortgage and notified both Gallagher and First American of Cappetta's claim.[5] On April 4, 2007, Gallagher sued Olmer for malpractice and breach of contract. First American also filed

---

[4] "Claim" is defined in the policy as "a demand received by the Insured for money or services arising out of an act or omission . . . in the rendering of or failure to render legal services. A demand shall include the service of suit or the institution of an arbitration proceeding against the Insured." "Related claims" are defined as "all claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of legal services."

[5] Olmer acted as First American's agent for the purpose of issuing title insurance policies with respect to the Gallagher transaction.

suit against the Firm and Olmer on June 15, 2007.[6]

C.     Client Security Fund Committee Payments

The CSFC investigates, evaluates, and determines whether claimants are entitled to statutory reimbursement for thefts of client funds by Connecticut attorneys. The CSFC has paid $143,530.35 to settle claims brought by Beverly Benton and Ronald Miller against Olmer.[7] CSFC has also paid $10,452.34 to settle claims against Olmer brought by Belinda Young. Young had asserted a claim against Olmer arising out of a December 21, 2006 sale of property in which Olmer represented Young.

D.     Other Claims

According to Continental's Amended Complaint, although not mentioned in its motion for summary judgment, Ticor has purportedly asserted a claim against the Firm and Olmer arising from the Benton and Miller matter. Olmer and the Firm allegedly acted as Ticor's agent in issuing one or more title insurance policies with regard to that property. Ticor has also asserted a claim against Olmer for an alleged failure to resolve prior liens on a Hartford, Connecticut property for which Olmer and/or the Firm acted as Ticor's title insurance agent. Additionally, Continental claims that Smokey J. Regan and Robert Miller have asserted claims against the Firm and/or Olmer in connection with Olmer's representation of them. None of these

---

[6] Continental's Amended Complaint also mentions additional allegations by First American against Olmer based on acts and omissions in "a number of [additional] transactions." See Amended Compl. at ¶ 74. Continental, however, does not address these other transactions in its motion for summary judgment.

[7] Benton and Miller have purported to assert claims against Olmer and the Firm based on Olmer's alleged failure to pay off a mortgage in connection with Benton and Miller's refinancing. Benton and Miller have apparently assigned and subrogated their rights and remedies to CSFC.

claims, however, are individually addressed in Continental's motion for summary judgment. Therefore, it appears that Continental is only seeking summary judgment on these claims on the basis that it can rescind the insurance policy at issue. Alternatively, Continental is also seeking declaratory judgment against Regan and Miller.

Continental moves for summary judgment on two grounds. First, Continental argues that it is entitled to rescind the insurance policy as a matter of law based on Olmer's allegedly material misstatements in the policy application. Alternatively, Continental argues that coverage for several of the matters are barred, as a matter of law, as either not covered under or excluded by the policy.[8] Finally, Continental seeks an entry of default against many of the individually named defendants based on a failure to plead or otherwise defend.

Defendants First American, Ticor, and CFSC oppose summary judgment, arguing that recision of the policy is not warranted because a genuine issue of material fact exists over whether Olmer knowingly made a material misrepresentation on his application. Defendant CSFC also contends that its claims are not barred under the policy's "dishonest conduct exclusion" (Exclusion A).

**II.     Discussion**

A.     Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of

---

[8] In its papers, Continental also argued that because the defendants did not file an answer to Continental's Amended Complaint, the Court should deem all of the allegations in the Amended Complaint as admitted. However, at oral argument on these motions, Continental indicated that it was no longer pursuing this line of argument, particularly in light of CSFC's filing of an answer.

law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); accord Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

When examining a motion for summary judgment the Court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, a party may not create a genuine issue of material fact by resting on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

B.    Is Continental Entitled to Rescind the Policy?

To be able to rescind an insurance policy under Connecticut law, an insurance company must prove a misrepresentation (or untrue statement) by the insured, which was knowingly made, and material to the insurance company's decision whether to insure.  Mt. Airy Ins. Co. v. Millstein, 928 F. Supp. 171, 174 (D.Conn. 1996); see also Pinette v. Assurance Co. of Am., 52 F.3d 407, 409 (2d Cir. 1995).

*i.     Misrepresentation*

Continental argues that Olmer clearly made a misrepresentation on his insurance application when he answered "No" to Question 3. The defendants, however, contend that Question 3 was ambiguous and, due to that ambiguity, Olmer's answer to Question 3 was not a misrepresentation as a matter of law. Because the Court holds that genuine issues of material fact exist over whether Olmer made the representation knowingly, the Court declines to decide whether Olmer's answer to Question 3 was a misrepresentation. Instead, the Court assumes for the purposes of summary judgment that Olmer's answer to Question 3 was a misrepresentation.

*ii.     Knowing*

The defendants argue that even if Olmer's response to Question 3 was a misrepresentation, a genuine issue of material fact exists over whether that misrepresentation was made knowingly. An individual does not make a knowing misrepresentation if the misrepresentation was made innocently—because of ignorance, mistake, or negligence. Pinette v. Assurance Co. of Am., 52 F.3d 407, 409–10 (2d Cir. 1995). "Innocent" misrepresentations occur when the applicant does not know that the information he is providing is false, id. at 410, or if the applicant was "justifiably unaware of the answer's falsity [and] had no actual or implied knowledge of its existence." Mt. Airy Ins. Co. v. Millstein, 928 F. Supp. 171, 175 (D.Conn. 1996). A "conscious design to defraud" is not required, see Middlesex Mut. Assurance Co. v. Walsh, 590 A.2d 957, 963 (Conn. 1991); rather, an insured makes a knowing misrepresentation when he submits an answer other than that which he has reason to believe is true. Mt. Airy, 928 F. Supp. at 175. The insured cannot simply claim that he did not read the application to demonstrate lack of knowledge; rather, the insured has an "affirmative duty to inform himself of

the content of the application signed by him." Northwestern Mut. Life Ins. Co. v. Gil, No. 3:07-cv-00303 (VLB), slip op. 2009 WL 276086, at *3 (D.Conn. Feb. 5, 2009).

Defendants argue that a determination of whether an insured made a knowing misrepresentation is inappropriate on a motion for summary judgment because that determination involves questions of intent, belief, and state of mind. See, e.g., Exantus v. Metro. Prop. & Cas. Ins. Co., 582 F. Supp. 2d 239, 246 (D.Conn. 2008); Lewis v. John Hancock Mut. Life Ins. Co., 443 F. Supp. 218 (D.Conn. 1977); Conn. Fair Plan v. Figueroa, No. CV064009858S, 2007 WL 1976124 (Conn. Super. Ct. June 15, 2007); Minn. Lawyers Mut. Ins. Co. v. Lancia, No. CV040412468S, 2006 WL 1229943 (Conn. Super. Ct. Apr. 17, 2006) (insured's affidavit stating any incorrect answer was just an inadvertent mistake sufficient to create issue of fact for summary judgment). However, that the insured's state of mind is in question does not always prevent the Court from granting summary judgment. See, e.g., Westport Ins. Corp. v. Gionfriddo, 524 F. Supp. 2d 167 (D.Conn. 2007) (finding that lawyer knew that acts, which had later resulted in twenty-two lawsuits and grievances brought against him, could have resulted in claims against him when lawyer completed insurance application); Mt. Airy, 928 F. Supp. at 176 (granting summary judgment and finding no disputed issue of fact with regard to knowledge because even if Defendant was in a drug-induced "fog" he still should have known his answer was false); Paul Revere Life Ins. Co. v. Pastena, 725 A.2d 996, 999 (Conn. App. Ct. 1999) (failure to read or examine the application carefully did not excuse or cause the misrepresentation to be innocent).

Here, Olmer has asserted that he believed the Walker matter had settled prior to his filing of the insurance application, which is why he did not report it. As for the Smythe lawsuit, Olmer

declared that he does not recall why he did not report the Smythe matter on the application, but it might have been because he did not remember it or did not think about it—not because he attempted to mislead Continental. Moreover, Olmer stated that the statements on his application were "true and accurate to the best of [his] ability at that time." Continental argues that Olmer must have knowingly omitted the Smythe suit because one month prior to filling out the application, Olmer filed an answer in that lawsuit. The filing of this answer, however, is not dispositive for the purposes of summary judgment of Olmer's state of mind one month later when he filled out the application, particularly in light of Olmer's affirmative answer to the question regarding disciplinary and complaint proceedings. But cf. Murtha v. Golden Rule Ins. Co., No. Civ.A.3:98-CV-975JCH, 2001 WL 256145 (D.Conn. Mar. 5, 2001) (finding a knowing misrepresentation where plaintiff had visited a doctor for problems with headaches the day he filled out the insurance application and yet answered "NO" when asked if he had experienced symptoms of or treatment for headaches). Therefore, although it is a close question, a material issue of fact exists regarding whether Olmer knowingly made a misrepresentation on the application or whether it was a mere mistake.

Therefore, because genuine issues of material fact exist regarding knowledge, the plaintiff's motion for summary judgment on the issue of rescission is denied.[9]

C.      Gallagher Claim

Continental argues that even if the Court finds it is not entitled to summary judgment on the issue of rescission, it is entitled to summary judgment on the "Gallagher Claim," or the claim

---

[9] Because the Court finds that genuine issues of fact exist regarding Olmer's knowledge of the alleged omissions, the Court declines to address the issue of materiality, as well as First American's argument that a material issue of fact exists regarding Continental's damages.

brought by First American against Olmer arising from the "Gallagher transaction." Continental argues that because Cappetta's demand was made prior to the inception of the policy, the subsequent suits by Gallagher and First American against Olmer are not covered under the policy because they constitute "related claims." In its opposition to the motion for summary judgment, First American states that it is only opposed to Continental's argument that it is entitled to rescind the policy. Additionally, at oral argument on this motion, counsel for First American indicated that First American is not seeking coverage for the Gallagher Claim and is therefore not contesting summary judgment on the Gallagher Claim. Therefore, summary judgment is granted for the plaintiff against First American on the issue of coverage for the "Gallagher Claim."

D.      The Policy's Dishonest Conduct Exclusion and CSFC

Continental argues that even if the Court finds it is not entitled to summary judgment on the issue of rescission, it is entitled to summary judgment on the claims paid by CSFC. Continental argues that payments made by CSFC trigger the policy's dishonest conduct exclusion (Exclusion A) and are therefore not covered. In response, CSFC states that Continental fails to articulate the legal doctrine upon which it bases this conclusion and that Continental cannot fulfill the requirements of collateral estoppel—namely whether "dishonest" has the same meaning to CSFC as it does in the policy, or whether CSFC's prior determination to cover the claim with its funds constitutes a "judgment." However, as Continental notes, it is not relying on the doctrine of collateral estoppel in support of its motion, but rather on the contractual exclusion in the policy, which states that Continental will provide the Insured with a defense on a claim unless or until the act or omission has been determined to be dishonest, fraudulent, criminal or malicious by "any trial verdict, court ruling, regulatory ruling or legal admission." Therefore, the

issue before the Court is whether the claims for which CSFC has a right of subrogation fall under this provision.

CSFC functions to provide a public service and all money and assets of the Fund constitute a trust. Conn. Practice Book § 2-68. CSFC admits that it was created to investigate, evaluate and determine whether claimants are entitled to statutory reimbursements for thefts of client funds by Connecticut attorneys. See id. §§ 2-68 and 2-73. To state a claim for reimbursement before the CSFC, the claim must be based upon the dishonest conduct of an attorney. Id. § 2-71(a). In cases of extreme hardship or in special or unusual circumstances, the CSFC may reimburse a claim which would otherwise be excluded under the Superior Court Rules. Id. § 2-71(d). CSFC has "absolute discretion as to the validity of the claims." Id. § 2-75(f). A determination that a claim has validity requires the affirmative vote of at least seven of the fifteen members of the Committee. Id. §§ 2-72(a) and 2-75(f).

Although this evidence shows that the CSFC only reimburses claims for dishonest conduct,[10] Continental has not provided any evidence that a decision by CSFC constitutes a trial verdict, court ruling, regulatory ruling or legal admission as required for Exclusion A to apply. Additionally, these terms are not defined in Continental's policy. It is clear that CSFC's decision is not a trial verdict or court ruling in the commonsense meaning of these words, and there is no indication in the record that Olmer or the Firm made a legal admission. Therefore, to fall under

---

[10] "Dishonest Conduct" is defined by the Connecticut Superior Court Rules as "wrongful acts committed by an attorney, in an attorney-client relationship or in a fiduciary capacity arising out of an attorney-client relationship, in the nature of theft or embezzlement of money or the wrongful taking or conversion of money, property, or other things of value." Conn. Practice Book § 2-69(a). "Dishonest Conduct" is not defined in the policy and, taking the facts in the light most favorable to CSFC, it is questionable whether the policy would define "dishonest conduct" the same as CSFC.

the policy, CSFC's decision must be reviewed to determine whether it was a "regulatory ruling."

The term "regulatory ruling" is ambiguous here. "[I]nsurance policy language is ambiguous if we determine that it is reasonably susceptible to more than one reading." Conn. Ins. Guar. Ass'n v. Fontaine, 900 A.2d 18, 23 (Conn. 2006) (internal quotation marks omitted). Here it is unclear whether "regulatory ruling" encompasses only rulings from state or federal agencies, or whether it encompasses reimbursement decisions from state committees, such as the CSFC, whose determinations are not considered pertinent to any disciplinary proceedings. See Conn. Practice Book § 2-75(j). Therefore, a genuine issue exists over whether the payment of a claim by CSFC constitutes a "regulatory ruling" under Exclusion A, and the plaintiff's motion for summary judgment against CSFC is denied.

E.     Entry of Default

Under Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Continental filed a complaint in this case on May 23, 2008. An initial summons was issued to the allegedly defaulting defendants on that day. The summons was reissued on July 21, 2008. All of these individuals were served on August 4, 2008. Answers to the Complaint were due on August 24, 2008.[11] As asserted in the affidavit of

---

[11] It does not appear that the Amended Complaint was served on any of the allegedly defaulting defendants. According to the Certificate of Service attached to the Amended Complaint, the Amended Complaint was served "via electronic filing on all attorneys of record in this matter." There is no mention of service by mail on anyone unable to receive electronic filing or of service on these individual defendants who have not made an appearance. The failure to serve the Amended Complaint, however, does not alter the Court's decision to enter default against these defendants because at the time the Amended Complaint was filed, approximately nine months had passed since these defendants had received notice of this suit.

Molree Williams-Lendor, and as evinced by a review of the docket, none of the defendants that Continental seeks default against have made an appearance through counsel or filed any answers or motions. Therefore, these defendants have failed to plead or otherwise defend and the clerk shall enter default against these defendants.

## III. Conclusion

Accordingly, the plaintiff's motion for summary judgment [Dkt # 51] is GRANTED IN PART AND DENIED IN PART as noted above.

Additionally, the plaintiff's motion for entry of default [Dkt # 83] is GRANTED against Defendants Morris I. Olmer, LLC, Morris I. Olmer, Thomas Gallagher, Beverly Benton, Ronald Miller, Smokey K. Regan, and Robert Miller.

SO ORDERED this   10th   day of August 2010, at Hartford, Connecticut.

 /s/Christopher F. Droney  
**CHRISTOPHER F. DRONEY**  
**UNITED STATES DISTRICT JUDGE**